NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

AMBER H., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, M.J., M.J., *Appellees*.

No. 1 CA-JV 19-0064
FILED 9-12-2019

Appeal from the Superior Court in Maricopa County
No. JD30758
The Honorable Nicolas B. Hoskins, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

David W. Bell, Attorney at Law, Higley
By David W. Bell
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Sandra L. Nahigian
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Michael J. Brown joined.

---

**W I N T H R O P**, Judge:

**¶1** Amber H. ("Mother") appeals the juvenile court's order terminating her parental rights to M.R.M.J. and M.J.J. (collectively, the "children"). Mother argues insufficient evidence supported the court's finding that Mother was substantially unlikely to be able to safely parent her children in the near future. *See* Arizona Revised Statutes ("A.R.S.") section 8-533(B)(8)(c). Mother also challenges whether the Department of Child Safety ("DCS") made diligent efforts in providing critical reunification services. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY[1]

**¶2** Mother met Jonathan J. ("Father") in 2011, while both were homeless. They began a relationship which has persisted, on and off, for nearly ten years. Throughout the relationship, Mother and Father struggled with domestic violence incidents, mental health issues, and substance abuse problems.

**¶3** Mother's and Father's first child, M.R.M.J., was born in January 2015; three months later, police were called to Mother's and Father's home after reports of an altercation where Father threatened Mother, yelled profanities at M.R.M.J., and, per some reports, became physically violent. Following this incident, Mother obtained an order of protection against Father prohibiting him from entering the home.

**¶4** In July 2015, however, Mother violated the order of protection by allowing Father back into the home and allowing him to be alone with M.R.M.J., prompting DCS to file an in-home dependency petition. DCS allowed M.R.M.J. to remain in the home with Mother under the supervision

---

[1] We review the facts and reasonable inferences therefrom in the light most favorable to affirming the juvenile court's order. *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010).

of a safety monitor while both parents completed services for domestic violence and substance abuse. When Mother failed to engage in services, M.R.M.J. was removed from the home. Mother and Father's second child, M.J.J., was taken into custody shortly after her birth in 2016.

¶5        In the months after the children were taken into custody, Mother engaged in a variety of services including individual counseling, substance abuse testing and treatment, mental health services,[2] and classes on parenting and domestic violence. By March 2017, Mother had successfully completed a Parent Aide program and was participating in all services required by DCS.

¶6        Later in 2017, the parents began having unsupervised visitation with the children, which eventually progressed to overnight visitation during the weekends. At that time, the long-term plan for the children was family reunification.

¶7        However, in April 2018, DCS shifted Father to supervised visits after he tested positive for cocaine. In July 2018, Father again tested positive for cocaine. As a result of Father's continued drug use, DCS created a safety plan in which Mother agreed to not allow Father to have any contact with the children. After a DCS case worker came to Mother's home and verified that Father was no longer living there, DCS authorized the continuing transition to reunification of the children with Mother.

¶8        On August 10, 2018, Mother called the children's DCS case manager and asked if there was anything else she needed to do regarding services. At the end of the conversation, the case manager heard a child's voice say "Daddy" and became concerned that Father might be in the home. An hour and a half later, the case manager made an unannounced visit to Mother's home and explained her concern that Father was in the home. Mother denied Father was in the home and accompanied the case manager through a search of the home. After finding no evidence that Father was or had been in the home, the case manager moved to leave but found Father hiding—without shirt or shoes—behind the front door. Father's presence

---

[2]        Mother has struggled with depression, suicidal thoughts, and bipolar disorder with psychosis features, including visual and auditory hallucinations. In addition, she was diagnosed with dependent personality disorder, meaning she was highly reliant on others, including Father.

in the home violated the safety plan, and Mother offered no explanation as to why he was present.[3]

**¶9** On September 27, 2018, the juvenile court changed the case plan to severance and adoption. DCS then moved to terminate Mother's parental rights on the grounds of out-of-home placement for fifteen months or longer, alleging a substantial likelihood Mother would not be capable of exercising proper and effective parental care in the future, *see* A.R.S. § 8-533(B)(8)(c).

**¶10** On February 12 and 28, 2019, the juvenile court held the contested severance hearing. After taking the matter under advisement, the court terminated Mother's parental rights to the children on the grounds of fifteen-month out-of-home placement under DCS supervision, *see* A.R.S. § 8-533(B)(8)(c), while further finding that severance was in the children's best interests. [4]

**¶11** Mother filed a timely notice of appeal. [5] We have jurisdiction pursuant to A.R.S. § 8-235(A) and Rule 103(A) of the Arizona Rules of Procedure for the Juvenile Court.

**ANALYSIS**

*I.    Standard of Review*

**¶12** A court may sever parental rights if it finds clear and convincing evidence of one of the statutory grounds for severance and finds by a preponderance of the evidence that severance is in the children's best interests. *See* A.R.S. §§ 8-533(B), -537(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 281-82, 288, ¶¶ 7, 41 (2005).

---

[3]    Father originally asserted he had only arrived a few minutes before the case manager to drop off food to the children. Another time, he claimed he was in the home only to pick up clothes. Later, he admitted Mother had used his phone to call DCS, which meant he had been in the home for at least an hour and a half before the case manager arrived.

[4]    The juvenile court found insufficient evidence to justify termination based on Mother's mental health or substance abuse.

[5]    Father did not appear for either trial date, and the court terminated his parental rights. Father is not party to this appeal.

¶13  The juvenile court retains great discretion in weighing the interests of the child, parent, and state. *Cochise Cty. Juv. Action No. 5666-J*, 133 Ariz. 157, 160 (1982). As the trier of fact in a termination proceeding, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (quoting *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004)). Thus, the resolution of conflicts in the evidence is uniquely the province of the juvenile court, and we will not reweigh the evidence in our review. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12 (App. 2002); *see also Pima Cty. Adoption of B-6355*, 118 Ariz. 111, 115 (1978) ("In considering the evidence it is well settled that an appellate court will not substitute its own opinion for that of the trial court." (citation omitted)). We will not disturb the juvenile court's order unless no reasonable evidence supports its factual findings. *See Matthew L.*, 223 Ariz. at 549, ¶ 7.

## II. *Adequacy of Services*

¶14  On appeal, Mother argues DCS failed to make diligent efforts in providing critical reunification services. Specifically, Mother contends that she was unable to obtain additional court-ordered domestic violence counseling because DCS failed to assign her counseling referral to a provider. In response, DCS argues Mother waived any argument regarding the adequacy of services when she failed to specifically raise that issue in the juvenile court. *See Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 178-79, ¶¶ 16, 18 (App. 2014) (holding the mother's failure to raise an issue until appeal "waived [her] right to argue for the first time on appeal that ADES failed to offer appropriate reunification services."). In the alternative, DCS contends reasonable evidence supports the juvenile court's finding that DCS made diligent efforts to provide appropriate reunification services. We address Mother's appeal on the merits because she testified at the termination hearing that she had previously told DCS she wanted to engage in additional domestic violence counseling.

¶15  In order to terminate Mother's parental rights, DCS must show that it provided adequate time and opportunity for Mother to participate in programs "designed to help her become an effective parent." *See Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). However, DCS is not required to provide every imaginable service, ensure the parent participates in all available services, or provide services that would be futile. *See Tanya K. v. Dep't of Child Safety*, 240 Ariz. 154, 157, ¶ 11 (App. 2016) (citation omitted). DCS must simply show that it provided the parent with services "which offer a reasonable possibility of success" that a

parent will be allowed to reunify with her children. *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 187, ¶ 1 (App. 1999).

**¶16**      Contrary to Mother's assertions, we find there is reasonable evidence to support the juvenile court's findings that the services provided by DCS were adequate.[6]  Mother testified that she received domestic violence counseling through the Parent Aide program in 2016 and completed all of her program goals relating to domestic violence.  In addition, the DCS case manager testified that Mother had also received domestic violence counseling along with her individual counseling from La Frontera.[7] Mother did not deny receiving any of these services, she merely asserted she should have been given additional domestic violence services. The case law, however, consistently holds that DCS "is not required to provide every conceivable service" for a parent. *JS-501904*, 180 Ariz. at 353. Although Mother testified at the termination hearing she wished she had additional time for further domestic violence counseling, she acknowledged that she had received "quite a bit of [domestic violence] education and classes" over the years and that she was able to recognize the signs of domestic violence and appreciate the harm it causes.  On this record, we agree with the juvenile court that the services provided to Mother gave her an adequate opportunity to address her issues with domestic violence and help reunify her family.

---

[6]     Mother was offered a variety of services in relation to this case including the Parent Aide program, supervised visitation, drug testing, substance abuse assessment and treatment, case management, transportation, psychological and psychiatric evaluations, and individual counseling.  Because Mother only challenges the sufficiency of services related to domestic violence counseling, we need not consider the adequacy of all services provided.

[7]     The DCS case manager also testified that in 2016, DCS attempted to refer Mother to Applied Behavioral Interventions, and later to Arizona Center for Change, for additional counseling but Mother did not engage, presumably because she was already obtaining counseling services through La Frontera.

### III.    Termination Pursuant to A.R.S. § 8-533(B)(8)(c)

¶17         Mother also argues the juvenile court erred in finding DCS presented sufficient evidence to support severance under A.R.S. § 8-533(B)(8)(c), the fifteen-month time-in-care ground.

¶18         Under A.R.S. § 8-533(B)(8)(c), the juvenile court may terminate parental rights if DCS "has made a diligent effort to provide appropriate reunification services" and:

> [t]he child has been in an out-of-home placement for a cumulative total period of fifteen months or longer pursuant to court order[,] . . . the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement and there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future.

¶19         Mother does not challenge the juvenile court's finding that the children have lived in an out-of-home placement for at least fifteen months, nor does she challenge that she has been unable to remedy the circumstances that cause the children to be in an out-of-home placement.[8] Mother's contention is with the juvenile court's finding that there is a substantial likelihood that she will not be capable of exercising proper and effective parental care and control in the near future. Mother asserts she has made significant progress regarding her parenting ability throughout the proceedings and that she has the ability to meet her children's needs. Mother also argues that, because the children were ready to transition home to live with both parents in April 2018, one subsequent single lapse in judgment—allowing Father into her home on August 10—does not justify termination of her parental rights.

¶20         However, we find reasonable evidence supports the juvenile court's finding that a substantial likelihood exists that Mother will remain unable to exercise proper and effective parental care and control in the foreseeable future. At trial, Dr. Silberman, a clinical psychologist, testified that, as of 2015, his initial prognosis for Mother's ability to demonstrate adequate parenting skills in the foreseeable future was "poor to cautious,"

---

[8]         Because Mother does not challenge these findings, she concedes that the findings are accurate. *See Britz v. Kinsvater*, 87 Ariz. 385, 388 (1960).

based largely on Mother's inability to sever her relationship with Father, who was abusive and had anger issues. In 2018, Dr. Silberman conducted another evaluation of Mother and concluded that the likelihood Mother could adequately parent was "poor" based on "the continued domestic violence in the relationship and her emotional difficulties."[9] Ultimately, Dr. Silberman asserted there did not seem to be any improved prognosis for Mother from 2015 to 2018, aside from Mother's decreased substance abuse.

¶21 The juvenile court acknowledged that Mother made great efforts in seeking to reunify her family, stating that the "progress [Mother] made over the course of this case has been deeply impressive," and recognizing that Mother has "worked extremely hard for her daughters." Nevertheless, the juvenile court was in the best position to evaluate the credibility of the witness testimony on this issue, and to conclude it is not in the children's best interests that the window of opportunity for remediation remain open indefinitely. *See Maricopa Cty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (1994).

¶22 Specifically, over the course of years, Mother has been unwilling, or unable, to separate from Father for the benefit of her children.[10] As the juvenile court noted, Mother's decision to allow Father back into the home, as well as her complicity in lying to the DCS case manager who came to her home, represented a "critical failure [in] judgment late in the case," which further supports the court's finding of a substantial likelihood that Mother will not be capable of exercising proper and effective care of her children in the near future.

IV. *Best Interests of the Children*

¶23 Mother does not concede the juvenile court's finding that severance was in the children's best interests. Nevertheless, on this record we find reasonable evidence supports such finding. *See Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990) (The "best interests of the child are a necessary, but not exclusively sufficient, condition for an order of

---

[9] Dr. Silberman also opined that while he did not think Mother would intentionally harm her children, he believed there was risk of harm to the children if Mother continued her relationship with Father.

[10] The juvenile court expressly found not credible Mother's assurance that Father was not living with her when he was found in her home on August 10, 2018. As previously noted, we do not reassess a witness' credibility. *See Oscar O.*, 209 Ariz. at 334, ¶ 4.

termination."). The best interests requirement may be met if DCS can show that the children are "adoptable," meaning adoption is not only possible, but likely. *See JS-501904*, 180 Ariz. at 352; *Titus S. v. Dep't of Child Safety*, 244 Ariz. 365, 370, ¶ 22 (App. 2018). The court may also consider whether the children's current placement is meeting their needs. *See generally Maricopa Cty. Juv. Action No. JS-8490*, 179 Ariz. 102, 107 (1994).

**¶24** Here, the juvenile court found that the children are residing in a "loving, safe and stable adoptive placement that is attending to their needs" and allowing them the "opportunity to remain with their siblings." *See Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 378, ¶ 6 (App. 1998) (recognizing maintaining sibling relationships as a factor supporting a best-interests finding). Also, termination of Mother's rights would further the case plan of adoption and would provide the children with much-needed permanency after being in out-of-home care for nearly three years. *See Oscar O.*, 209 Ariz. at 334, ¶ 6. Accordingly, we find that reasonable evidence supports the court's finding that terminating Mother's parental rights was in the children's best interests.

## CONCLUSION

**¶25** For the foregoing reasons, the juvenile court's order terminating Mother's parental rights to the children is affirmed.

